## PHILLIPS v PRUDENTIAL INS CO

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 4, 1935

H. H. Wickham, Youngstown, for plaintiff in error.

Manchester, Ford, Bennett & Powers, Youngstown, for defendant in error.

382

## OPINION

By NICHOLS, J.

Thomas Phillips, administrator of the estate of Margaret Phillips, deceased, plaintiff, brought his action against The Prudential Insurance Company of America, defendant, to recover the amount claimed due plaintiff from defendant on a life insurance policy issued by said company to Margaret Phillips. The policy involved was issued June 20th, 1927, and was in the amount of $1,000.00. The weekly premium was fifty-six cents, and the assured was twenty-five years of age at the date of issue.

The insured defaulted in the payment of said weekly premiums, and on November 28th, 1930 the policy being at that time thirty-six weeks in arrears the policy was renewed by the assured, executing and delivering to the company a premium note in the sum of $20.16, which indebtedness became a lien on the policy, effective December 8th, 1930. Thereafter current premiums were paid to and including June 15th, 1931, and by reason thereof the policy was in full force and effect until June 22nd, 1931. After June 22nd, 1931, no further premiums were paid, nor were any payments ever made on the premium note.

The assured died April 17, 1933, and payment of any amount of the policy having been refused by the company, on the ground that the policy had lapsed and the coverage had expired before the death of the assured, this action was filed in the Common Pleas Court.

The issues were presented to the Common Pleas Court upon the pleadings and the evidence, a jury being waived by the parties, and said court finding in favor of the defendant. Error is prosecuted to this court, the parties remaining in the same relative position as in the court below, and will be referred to respectively as the assured and the company.

In determining whether the Common Pleas Court erred in finding for the defendant, two questions are presented: First, what was the length of the extended term insurance which was automatically placed in effect when the assured ceased paying premiums on June 22nd, 1931; Second was there any duty on the part of the company to give notice that the policy automatically lapsed or was terminated for non-payment of premiums?

It is conceded by the parties that the policy having lapsed on June 22nd, 1931, the assured became automatically entitled to non-participating extended insurance for a certain term, it being likewise conceded by the parties that the assured did not surrender said policy nor elect to take the cash surrender value thereof or a paid up life policy in accordance with the option set forth in the policy. The record likewise shows the parties in accord upon the proposition that under the standard industrial experience table, with 3½% interest per annum, as provided for in the policy, the amount available for extended term insurance at the time said policy lapsed was $30.09, and that this amount, if the indebtedness of the assured is not to be deducted first therefrom, was sufficient to extend the insurance for the period of two years and forty-two weeks next after June 22nd, 1931, making the expiration date subsequent to the death of the assured. but if the indebtedness of the assured to the company is first to be deducted from this sum of $30.09, there would remain only $9.93 available for extended term insurance, which sum of $9.93 was sufficient to extend the insurance only for the period of forty-eight weeks next after June 22nd, 1931. making the expiration date of the extended term insurance May 16th, 1932, before the death of the assured.

The question is, therefore, resolved into one whether or not the amount of the indebtedness of the assured to the company is first to be deducted from the non-forfeiture value of the policy before the term of the extended insurance is computed, or whether the full non-forfeiture value of the policy is to be used in computing the term of extended insurance and the company relegated to the position of deducting from the face of the policy at the death of the assured the amount of indebtedness of the assured to it.

To determine this question we first look to the provisions of the policy, which is the contract between the parties. From the policy we quote the applicable language thereof:

"If there be any indebtedness under this policy, such indebtedness will be deducted from the cash surrender value, or the term of the extended insurance or the amount of the paid-up life policy will be reduced to such term or amount as the net single premium value of the respective provisions reduced by such indebtedness shall provide, according to the mortality table hereinafter specified." (Standard industrial mortality table).

As above stated, at the time the assured stopped paying premiums and the policy lapsed, the assured did not exercise any of the options granted to her in the policy, which were to surrender the policy within three months after such lapse and receive either a non-participating paid-up life policy or payment in cash as specified in the table incorporated in the policy. Therefore, if we strike from the above quoted provisions of the policy applicable to cases where assured has made an election of options and leave only the provisions of the policy in case where the assured has done nothing, we read:

"If there be any indebtedness under this policy, such indebtedness will be deducted from the * * * term of the extended insurance * * * at the net single premium value * * * reduced by such indebtedness shall provide, according to the mortality table hereinafter specified."

This language is not ambiguous and clearly provides that the indebtedness of the assured to the company ▇▇▇▇▇ in the amount of $20.16, and interest, shall first be deducted from the $30.09 non-forfeiture value of the policy, leaving only $9.93 available for computing the term of extended insurance.

Let us see to what situation the company would be relegated if we were to adopt a construction of this language to the effect that the whole sum of $30.09 should be used in computing the duration of the extended term, and then let us suppose that the assured lived longer than the limit of this extended term so that the coverage had entirely ended before the death of the assured. It is seen that in such event there would be nothing from which the company could deduct the amount of the indebtedness of the assured to it, and its lien would be lost.

We are further confirmed in our conclusion of this matter by the language of the note given by the assured to the company for the amount of the indebtedness of the assured to the company, which provides as follows:

"That if said policy shall lapse or become forfeited in any manner, the said amount, with interest accrued thereon, shall be deducted from the cash surrender value of the said policy, and the amount, with interest accrued thereon, shall operate to reduce the amount of any paid-up life or endowment policy or to reduce the term of extended insurance (if any) granted by the

terms of said policy in accordance with the rules of the company."

Plaintiff in error calls our attention to the case of **National Benefit Life Insurance Co. v Hatcher**, decided by the Court of Appeals for this district November 4th, 1932, reported in **14 Abs 313**, the syllabus reading:

"A life insurance company which has made a loan on a policy of insurance to the extent of the full cash value of the policy, can not, upon the failure of the policy holder to repay the loan on its due date, and to pay the insurance premium when it fell due, summarily declare the policy void without giving the one month's notice required by §9412 GC; especially in view of the fact that premiums sufficient to extend the insurance may possibly have been earned."

The pertinent provisions of §9412, GC, upon which the court based its conclusion in the case of National Benefit Life Insurance Company v Hatcher, supra, are as follows:

"The company will, however, deduct from such loan value any existing indebtedness to the company on the policy and any unpaid balance of the premium for the current policy year, and may collect interest in advance on the loan to the end of the current policy year. Such loan may be deferred by the company for not exceeding six months after the application therefor is made. Failure to repay any such advance or to pay interest shall not avoid this policy unless the total indebtedness hereon to the company shall equal or exceed such loan value at the time of such failure, and until one month after notice shall have been mailed by the company to the last known address of the insured and to the assignee, if any. No condition other than as herein provided shall be executed as a prerequisite to any such advance."

We can see no application ▇▇▇▇▇ of the quoted portion of §9412, GC, to the case now under consideration.

In this case the policy was not avoided by the company for failure to pay the loan, but the policy automatically terminated by reason of a default in the payment of the premium, thereby causing a lapse and invoking the non-forfeiture provision of the policy.

"The payment of premiums is of the very essence of a contract of insurance."

"A policy of life insurance automatically terminates and is of no further force where there is a default in payment of premium, thereby causing a lapse and invoking a clause to the effect that the cash or surrender value at the time of default, less any indebtedness to the insurer, shall be applied as a premium to pay for extended insurance, and it appears that the indebtedness to the insurer, including a policy loan, equals or exceeds such cash or reserve value."

"In such case, another clause of the policy providing that failure to repay the policy loan shall not avoid the policy unless the total indebtedness thereon to the insurer equals or exceeds the loan value of the policy at the time of such failure and until one month after notice is maile.! to the insured, is without application, for the reason that the policy is terminated solely by operation of the clause relating to default in paying the premium. The two clauses are independent, unrelated and contemplate different contingencies."

**The Columbus Mutual Life Insurance Co. v Haines, 129 Oh St, 472.**

Therefore, reading into the provisions of this policy that which is provided by §9412 GC, as quoted above, and upon which this court based its decision in National Benefit Insurance Company v Hatcher, supra, still we must find that the policy in question was terminated for failure to pay the premiums provided for in the policy, and that under the provision of the policy the indebtedness of the assured to the company was first to be deducted from the reserve value and only the balance remaining was available in determining the duration of the term of extended insurance.

It follows that all rights of the assured under this policy had terminated before her death.

Finding no error in the judgment of the trial court, and that substantial justice has been done, the judgment of the Court of Common Pleas is affirmed.

Judgment affirmed.

CARTER and ROBERTS, JJ, concur.